**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff/Respondent,** | § | |
| | § | |
| **v.** | § | **CR. No. C-11-718** |
| | § | **(C.A. No. C-12-328)** |
| **JOSE PLUTARCO ERAZO,** | § | |
| | § | |
| **Defendant/Movant.** | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Jose Plutarco Erazo's (Erazo) motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and his memorandum of law in support. D.E. 22, 23.[1] The government responded to the motion. D.E. 31. Although Erazo requested and received three extensions of time to file his reply, he has not done so. D.E. 33-37.[2]

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Erazo was arrested in July 2011 at the Falfurrias, Texas Border Patrol Checkpoint. He was stopped for an immigration check when a drug dog alerted to the Ford Ranger Erazo was driving. D.E. 1. He was directed to secondary screening and consented to a search of his vehicle. Id. Agents discovered 15 bundles of heroin weighing 9.16 kilograms in the frame of the vehicle. Erazo was arrested. He waived his Miranda rights and admitted that he knew there were drugs in the vehicle

---

[1] Docket entry numbers (D.E.) refer to the criminal case.

[2] Erazo was granted until April 5, 2013 to file his reply. As of this date, the Clerk has not received his filing.

and that he was to be paid $5000 to deliver the drugs to Dallas.

Erazo was appointed counsel after his arrest. D.E. 2. He was later ordered to pay counsel $5000 after the Court determined he had the ability to pay counsel. D.E. 4. Erazo was indicted in July 2011 and charged with possession with intent to distribute more than 1 kilogram of heroin (approximately 9.16 kilograms) in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). D.E. 8. Erazo was arraigned within a week following his indictment. See Minute Entry August 2, 2011.

Erazo was rearraigned in September 2011. He pled guilty pursuant to a plea agreement with the government. D.E. 14, Minute Entry September 21, 2011. At rearraignment, Erazo testified that he understood the charges against him, he discussed the plea with his attorney, and he was satisfied with his attorney's services. D.E. 28 at 8-9. Erazo further testified that he had not been threatened or coerced into signing the agreement and that no one made any promises to him to get him to plead guilty other than set forth in the agreement. Id. at 10-12. The Court reviewed the waiver of appeal and § 2255 rights with Erazo.[3] Erazo was advised of his sentencing range of 10 years statutory

---

[3] 2 THE COURT: In each agreement, I'm confirming
3 that right now, give me just a moment. In each
4 agreement, there is a waiver of certain rights to
5 appeal.

* * * *

9 THE COURT: Mr. Erazo, were you aware of that?
10 DEFENDANT ERAZO: Yes, sir.

* * * *

15 THE COURT: Were you aware that you not only in
16 this provision, not only waived your right to directly
17 appeal your conviction and sentence, but also to
18 collaterally attack it under another federal statute
19 known as 28 United States Code Section 2255?

* * * *.

23 THE COURT: Were you aware of that, Mr. Erazo?
24 DEFENDANT ERAZO: Yes, sir.

* * * *

13 THE COURT: Mr. Erazo, did you discuss the
14 waiver with your lawyer?
15 DEFENDANT ERAZO: Yes, sir, I did.

minimum up to life imprisonment, minimum 5 years supervised release, a fine of up to $10 million dollars, potential community restitution, and special assessment of $100.[4] The Court explained the sentencing process. Erazo testified he understood. Id. at 20. After the AUSA recited the facts of his offense, Erazo testified that the facts were correct and pled guilty to the indictment. Id. at 27.

The Probation Department prepared a Presentence Investigation Report (PSR). D.E. 16. Probation calculated Erazo's base level offense at 34 based upon 7.99 kilograms net weight of heroin found in his vehicle. D.E. 16 at ¶ 12. Three points were subtracted for acceptance of responsibility, resulting in a total offense level of 31. Id. at ¶¶ 18-21. Erazo had prior criminal convictions, including a family violence assault in 2002 that resulted in a year confinement, an assault in 2003 that resulted in 60 days imprisonment, and a terroristic threat in 2004 that resulted in 365 days imprisonment. Id. at ¶¶ 23-25. His criminal history points totaled 6, resulting in

---

> 16 THE COURT: Do you feel like you understand the
> 17 waiver and how it may affect your rights in this case?
> 18 DEFENDANT ERAZO: Yes, I understand everything,
> 19 sir.
> 20 THE COURT: Do you have any questions you want
> 21 to ask me about the waiver?
> 22 DEFENDANT ERAZO: No, sir.

Id. at 13-14.

> [4]7 THE COURT: And [], these are drug
> 8 offenses. Yours is cocaine, yours is heroin, but your
> 9 penalty range is driven by the quantity of drugs you're
> 10 held responsible for. And because of the quantity, your
> 11 penalty range is the same for each of you. In other
> 12 words, not less than 10 years in prison up to life in
> 13 prison, a fine not to exceed $10 million, at least five
> 14 years of supervised release, and a $100 special
> 15 assessment, and a provision for community restitution up
> 16 to the amount of any fine imposed by the Court.
> 17 Mr. Erazo, do you understand that's your
> 18 penalty range?
> 19 DEFENDANT ERAZO: Yes, sir.

Id. at 16.

application of criminal history category III. Id. at ¶ 26. His sentencing range was 135-168 months, with a statutory minimum sentence of 10 years. Id. at ¶¶ 52-53. No objections were filed to the PSR. D.E. 18.

At sentencing, the government agreed that but for Erazo's previous convictions, he would have qualified for safety valve. The government urged a high-end guideline sentence of 168 months. Defense counsel argued for a low-end guideline sentence of 135 months. The Court imposed a mid-guideline sentence of 144 months in the Bureau of Prisons, 5 years supervised release, and a $100 special assessment. D.E. 29 at 12, D.E. 20. The Court reminded Erazo that he waived his right to appeal. Id. at 13. Judgment was entered on January 4, 2012. D.E. 21. Erazo did not appeal. The motion to vacate was received by the Clerk on October 19, 2012. D.E. 22. It is timely.

## III. MOVANT'S ALLEGATIONS

Erazo complains that his counsel was ineffective on the grounds that counsel failed to object to his prior conviction for family violence in paragraph 23 of the PSR, failed to object to his prior conviction for Terroristic Threat in paragraph 25 of the PSR, and failed to argue for downward departure from the USSG for a below-guideline sentence. D.E. 22 at 4, 5, 7. Additionally, Erazo claims the government breached the plea agreement and he was entitled to receive a reduction for safety valve. Id. at 7, 8. Finally, in his memorandum in support of his § 2255 motion, Erazo claims that his sentence exceeded the 10 year maximum sentence. D.E. 23 at 2.

The government argues that Erazo's motion should be dismised because he waived his right to file the motion pursuant to the terms of his plea agreement. D.E. 31 at 1. Alternatively, the government argues that Erazo's claims of ineffective assistance are conclusory, it did not breach the plea agreement, Erazo was ineligible for safety valve because of his prior criminal history, and

Erazo's claim that the statutory maximum sentence was 10 years is factually incorrect. Id. at 17-21.

## IV. ANALYSIS

### A. 28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).

### B. Waiver of Right to File § 2255 Motion

Erazo claims that his attorney was ineffective during sentencing and that the government breached the plea agreement, among other issues. Erazo also complains that he did not appeal Ground Four because he waived his right to appeal in the plea agreement, "which clearly applicant did not know, nor understand the rights he was waiving by his guilty plea." D.E. 22 at 9. Erazo also complains of the government's "illusory promises."

Erazo attacks the waivers in two ways, first by claiming counsel was ineffective and second by complaining that the government breached his plea agreement.

1. *Alleged ineffective assistance of counsel*

Erazo's claims of ineffective assistance do not automatically relieve him of his plea bargain

waiver of his right to appeal or to file a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. See United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (An ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself"). In White, the Court decided there was "no need to except ineffective assistance of counsel claims from the general rule allowing defendants to waive their statutory rights so that they can reach a plea agreement if they wish. The Sixth Amendment right to effective assistance of counsel may also be waived, and thus need not be treated any differently." Id. at 343 (internal citations omitted).

The record of Erazo's rearraignment confirms that he understood the charges against him, the quantity of heroin at issue, that his minimum sentence was 10 years, and that he could be sentenced up to life imprisonment. Erazo testified that his plea was voluntary, and he agreed with the AUSA's description of his conduct before he pled guilty. Erazo also testified that he understood the waiver of appeal and post-conviction challenge and had discussed these waivers with counsel before he signed the plea agreement. He did not have any questions for the Court regarding the effect of the waivers.

Erazo's sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)) (Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002).

Erazo's sworn statements preclude the relief he seeks here. He was not coerced, and he understood the charges against him, the trial rights he was giving up, the possible maximum sentence he faced, and the waiver of his appellate and post-conviction rights. Because his waiver

was knowing and voluntary, he gave up the rights he now seeks to assert. See United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights).

2. *Government's alleged breach of plea agreement*

The Fifth Circuit has held that an alleged breach of a plea agreement may be raised despite waiver of the right of appeal. United States v. Pizzolato, 655 F.3d 403, 409 (5th Cir. 2011); United States v. Roberts, 624 F.3d 241, 246 (5th Cir. 2010). Although both Roberts and Pizzolato involved direct appeal waivers, the same reasoning applies here. Erazo's waiver does not preclude this Court's consideration of his claim that the government breached the plea agreement.

Erazo claims that the government breached the plea agreement as to paragraph 7 of the PSR.[5] Erazo does not state in what way the government breached the plea agreement, but the Court has interpreted his claim to be a breach of the substantial assistance paragraph of his plea agreement with the government, the only paragraph that addresses a downward departure. Erazo is *pro se* and his claims must be interpreted liberally.[6]

Erazo's plea agreement regarding substantial assistance states:

> 3. Furthermore, should the Defendant provide substantial assistance to the Government as outlined in U.S. Sentencing Guidelines, Section 5K1.1 and 18 U.S.C. § 3553(e) the Government will recommend to the Court a reduction in the Defendant's sentence and recommend a sentence commensurate with the value, completeness, and truthfulness

[5] The PSR has a paragraph 7 entitled "Victim Impact." Paragraph 7 of the Plea Agreement relates to Erazo's waiver of his right to appeal or collaterally challenge his conviction or sentence. See D.E. 14.

[6] *Pro se* pleadings must be liberally construed to address the relief sought. As a general proposition, review of the merits of a federal prisoner's claim is not circumscribed by the label attached. Andrews v. United States, 373 U.S. 334, 337 (1963). Because the essence of the pleading controls, titling and erroneous citation of authority have been ignored. United States v. Hay, 702 F.2d 572 (5th Cir. 1983).

> of the Defendant's information. *This agreement does not obligate the Government Attorney to make a motion for downward departure if in the Government Attorney's evaluation the Defendant had not provided substantial assistance*. Substantial assistance is understood by both parties to require good faith during all phases of the cooperation period, to include complete and honest debriefing which assists in the investigation or prosecution of other individuals, and complete and truthful testimony at subsequent trials when needed. In this connection, *it is understood the Government's determination of whether the Defendant has cooperated fully and provided substantial cooperation, and the Government's assessment of the value, truthfulness and completeness of the Defendant's cooperation are solely within the judgment and discretion of the Government and shall be binding upon the Defendant. The Defendant agrees and understands that the decision whether to file such a motion rests within the sole discretion of the Government*, and that the decision whether to grant such a motion rests solely with the Court.

D.E. 14 ¶ 3 (emphasis added).

The party claiming breach of the plea agreement bears the burden of demonstrating the facts that establish breach by a preponderance of the evidence. Pizzolato, 655 F.3d at 409. To determine whether the government breached the plea agreement, the Court must consider whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement. Id. (citing United States v. Elashyi, 554 F.3d 480, 501 (5th Cir. 2008)). General principles of contract law apply. Elashyi, 554 F.3d at 501.

The plain language of the plea agreement states that it is the government and only the government that has the right to evaluate and determine whether the cooperation provided rises to the level of substantial assistance. In United States v. Price, the Fifth Circuit recognized that the inquiry is different when the government bargains away its discretion. 95 F.3d 364, 368 (5th Cir. 1996). However, "where the plea agreement expressly states that the government retains 'sole discretion' over the decision as to whether or not to submit a motion, we have held that a refusal to

do so is reviewable only for unconstitutional motive." Id. The plea agreement here expressly states that the decision regarding a § 5K1.1 departure is at the government's sole discretion.

At the time of sentencing, the government stated that nothing had developed from the information Erazo gave the government. See D.E. 29 at 3-4.[7] Because the government did not relinquish its sole discretion, the Court may not second guess the government's decision not to request a downward departure for substantial assistance. In light of the record, the Court finds that Erazo has not established any breach of the plea agreement.

There is no basis for the Court to disregard Erazo's waiver of his right to file this proceeding.

---

[7] MR. CAVADA: My client feels like he could benefit with a continuance.
THE COURT: Well, let me ask you this: There is no reason to go through the exercise unless he's got something new. And he's changing his attitude, I guess, about how willing he is to provide information. You're telling me that he's going to have something for them?
MR. CAVADA: He doesn't have anything new. He's just hoping we can follow up on what we've given him already.
THE COURT: So that's a reason you want a continuance, to see where that's going.
Anything in the works that you know of?
MR. DUKE: No, Your Honor. Our position is that's what Rule 35s are for.
MR. CAVADA. I have explained a Rule 35 to him. But he says, "Well, if we don't do anything now, they are going to abandon me and I'm never going to benefit from the Rule 35."
THE COURT: Well, you know, that may be true, but the problem is he's got to give them something they can work with. If there is nothing in the works --
MR. CAVADA: That's a problem.
THE COURT: -- I don't know that there is any reason to put it off, unless U.S. Attorney's Office says we're trying to work some leads, making some calls. If they are doing something, I'll allow him to have more time.
But I'm not hearing that, Lance?
MR. DUKE: No, sir. There is nothing imminent, nothing in the works.

Id.

All of his remaining claims fall within his waiver or are otherwise not cognizable in this proceeding.[8]

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Erazo has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must

[8] Erazo's claim that the Court sentenced him above the statory maximum sentence is factually incorrect and not cognizable in this proceeding. The statutory minimum sentence in this case was 10 years with a maximum sentence of life imprisonment. 21 U.S.C. § 841(b)(1)(A). "A district court's technical application of the Guidelines does not give rise to a constitutional issue cognizable under § 2255." United States v. Segler, 37 F.3d 1131, 1134 (5th Cir. 1994).

show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Erazo is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. See Jones, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, Erazo's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 22) is **DENIED**. He is also denied a Certificate of Appealability.

It is so **ORDERED.**

**SIGNED** on this 22nd day of May, 2013.

John D. Rainey

JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE